Good morning. May it please the court. My name is Patrick Brown and I represent the appellant, Ms. Melanie Davis. Ms. Davis is asking this court to reverse the district court's findings of mootness and to remand the case to the district court with instructions to, one, enter summary judgment in favor of Ms. Davis with respect to the issue of whether Emma Crumby's has sufficient accessible parking. And two, allow entry of Ms. Davis' proposed amendment with respect to the seating issue. Let's speak just a little more slowly so we can follow. Thank you. Turning to mootness. Generally speaking, mootness occurs when a defendant provides a plaintiff with everything demanded in her complaint, regardless of the defendant's feeling about the merits of plaintiff's demands. In this case, Ms. Davis' complaint demanded five accessible parking spaces, and Emma Crumby's has only provided four. The mootness analysis ends there, because Emma Crumby's did not provide Ms. Davis with everything she demanded in her complaint. What the district court should have done is to enter judgment in Ms. Davis' favor. When taking inferences in the light most favorable to Emma Crumby's, the record establishes that there is no genuine issue of material fact that Emma Crumby's does not have adequate accessible parking at the premises. What if there are two different facilities? Then do we have one claim that's moot and one claim that has to be resolved on the merits? Well, Ms. Davis presented a claim that there was not enough accessible parking. When Ms., that there was actually in fact no accessible parking when she visited Emma Crumby's. And the parties both agree that, at least the evidence shows that there were 131 spaces on the property that is owned by Emma Crumby's and that serve the restaurant. Whether or not the back parking facility is, or the back parking lot is a separate parking facility, first is a question on the merits. But the only thing that that does is change how many spaces that are needed. It doesn't change whether or not Emma Crumby's had a sufficient number. If it's a single parking facility, then Emma Crumby's needed to have five parking spaces. Right, but I think their position is there are two facilities. We need four in the front, and we're not required to have any in the second facility, because your client doesn't have standing to raise a claim about the second facility. Well. What do you say to that? Are you asking about with respect to the question of mootness or with respect to summary judgment or both? Because they're somewhat different situations. Interrelated in a way here, so go ahead and address it however you think is best. Well, with respect to mootness, regardless of the merits, again, mootness should not have been entered because Ms. Davis asked for five. And so whether or not the district court ultimately was going to find in her favor that she had standing for to ask for those spaces in the back, the finding of mootness was inappropriate. But Ms. Davis- What do you think the court, suppose the court says, all right, I'll consider it a live case and I conclude there are two different parking facilities. So- You're really claiming spots in one and spots in the other. No. So as an initial, well, so under the law, the, I mean, if Abercrombie's wanted to, they could put the spots in the back. But they're not required to. The law, the ADA, the regulations, anticipates a situation like this, where you have multiple parking lots that are considered separate parking facilities. And putting spots in one of the parking facilities wouldn't be very useful, because it would be far away from the accessible entrance. And it allows for business owners and property owners to put those spaces in a more accessible place. So, practically speaking, what Abercrombie should have done was put in the two spaces that are needed by the count of his two separate parking facilities in the front of the restaurant. So Ms. Davis is not asking- But why do they have to do anything, if the four have never been filled, why- Well- Why do you have any grounds to complain about whether the overflow lot has two either there or up front? Well, Ms. Davis has established that she was injured by the lack of accessible parking when she went to Abercrombie's. Her declaration is very- That was before the- But part of that is- Correction. Yeah, part of that is asking for a correction to what she's entitled to under the law. Ms. Davis and frankly, anyone similarly situated to her, shouldn't be required to continue back, to go back to the same place over and over again until if they have four and they really need six. They run into the situation where they need all four are filled. But because this was on a motion to dismiss, there wasn't, with respect to that issue, the question of whether or not four is sufficient for this building didn't exactly come up because the law is what governs what is sufficient. And the law says that if there's two parking facilities, what is sufficient is six. Well, counsel, I wanted to ask you, so one of the things you asked for on appeal in terms of relief is you asked for the entry of summary judgment for your client, but I think that's a bit premature in light of the colloquy we're having here. In the sense that if the district court was wrong and the back lot was before it. And I think it probably was based on the way you argued it. I mean, it was definitely an issue that you brought up during the course of the proceedings. There's still a question as to whether they need five if we treat it as one lot. There's a question if they need four in the front and two in the back if we treat it as two lots. So aren't those things, I mean, we could vacate the summary judgment, but I'm not sure, I think it's a little premature to enter summary judgment. I wonder what your response is. Well, the court made the finding that it was two parking facilities, which would mean that they need six. That's a finding that's already been made, and Ms. Davis did not appeal that finding, and neither did McCrombie's. And so the, that there was two separate parking facilities. That finding has not been appealed. You're not challenging that. No, if the district court wants to find that it's two, then my client wants six spots. She wants what she's entitled to under the law. One in the front, two in the back. No, the two spaces don't have to be in the back. And McCrombie's can make a, they can make a decision to install them where it is most appropriate for accessibility. So they don't have to be in the back. She's never alleged that she tried to park there or needed to park there. Well, it serves the restaurant. And she's asking for what she's allowed. When she went there, she found no accessible parking. And the remediation that she's asking for is that they come into compliance with the law with respect to the amount of accessible parking that they are required to have. Well, I know, but I don't, a person can't just drive around town and look for deficiencies under the ADA and file lawsuits. They actually can, there is testers standing for that, but that's not what happened here. What happened here is Ms. Davis went to, as the record shows, Ms. Davis went to Ember Crumbie's and she was attempting to go inside. But the day that she went there, there was no accessible parking. There was, if you look at her declaration, she explains very clearly how each deficiency affected her individual disability and how it injured her. I'm just wondering why that gets her beyond the main lot. That gets her standing to sue for the spots that she couldn't park in up front. But again- Companies responded to that by putting in the four. But she asked for more, so under the mootness analysis, she's entitled to that. And under the mootness analysis, it cannot be dismissed. But she's entitled to more because her rights were violated, and she's asking for the fix of coming into compliance to the maximum extent allowed by the law. So your argument is basically, I don't know how many spots it had before, but say she showed up at Emma Crumbie's and there were two spots. It's not enough, say that Emma Crumbie's created three spots in the front lot. You're making the same kind of argument. You're saying that they didn't fully remedy the issue. She was harmed by the fact that there weren't the legally required number of spots. I just want to understand the argument. And so they haven't fully remedied what her injury was. What about this declaration of the ADA compliance expert that was filed? And as you read it, it certainly reads as if any ADA issues have been remedied. And there's a recounting of exactly what's there and how everything's laid out. And that the access ways have been provided, doesn't that? No, well, Your Honor, there's- Provided, doesn't that take care of this issue? No, Your Honor, because there's a mistake of law within that affidavit. Under 208.1, where parking spaces are provided, parking spaces shall be provided in accordance with the scoping requirements in all but very limited circumstances. And the expert in that case stated that they don't need to provide spots for the back parking lot. Because it was described by both the expert and Mr. Morris as being used for employees, trucks, and overflow parking. But the only relevant exception would be if it was used solely for truck parking. And there's no dispute between the parties that that's not the case. The photographs that were submitted attached to Mr. Morris Walker's affidavit at, in the appendix at page 139 show that there's a car in that back parking lot. Which means it couldn't possibly be used solely for truck parking. Which means under the scoping requirements of the 2010 standards, they have to provide spaces with respect to those spots. Unfortunately, the expert got that wrong. She got the wrong one. I'm sure, right, that Judge Benton- Yeah, I argued that, yes, I am familiar with that. If a person comes to a building and sees deficient parking, the person can challenge the parking but doesn't have standing to go beyond that and challenge things within the building. Is that how you read it? Not exactly. I don't know if you agree with it or not. I think the holding is that absent a showing of some injury with respect to the interior, then Ms. Davis would not have standing to challenge interior barriers. But in this case, Ms. Davis- Before you tell me the answer, let me say, why wouldn't the same rationale apply to the two different parking facilities? Because- She's only had an injury as to parking facility number one, but not as to number two, just like she didn't have one in the building in the other day. Because Ms. Davis encountered all of the parking. She has alleged 130 spaces, which is what is in both parking facilities. Now, Ms. Davis is unable to know at the time that she files her complaint whether or not the finding is going to be that there's one parking facility or two. So Ms. Davis alleges, well, I went here, I know that this property has, I encountered this property that has 130 spaces, and it had no accessible parking. So she has encountered all of the parking, and the fact that the judge later makes a finding that it's two separate parking facilities doesn't negate the fact that she encountered the parking at this location, and that it was deficient, and that that deficiency caused her an injury. I ask one additional question. You mentioned, Judge Shepard mentioned the affidavit from the expert, and I'm just wondering if that also presents a fact question that the district court needs to figure out whether or not that that is actually open to customers, or whether that's something that is not available to customers and is only available to trucks or whatever the case may be, or is that definitively shown by the record, undisputed? I think that it is undisputed by the affidavits submitted by Mr. Morris, as well as the description in the expert report, that that parking is not used solely for truck parking. And regardless of, as long as there's cars parking there, they have to have accessible spaces for those spaces. So, and Mr. Morris himself multiple times has described it as employee truck and overflow parking. And if it's overflow parking, presumably that means that people are going to the restaurant or parking there during their peak time. I don't know the car photograph that you put in, the employee car. It doesn't matter if it was. It just shows that it wasn't used solely for trucks, and that's the only exception to the rule. If it's trucks and employees, then they have to have accessible parking for customers, even if it's just for trucks and employees? They have to have accessible parking. It doesn't matter who it's for. Because if they had an, well, because if an employee had. And she's not arguing on behalf of the employee. This is, they have a certain number of parking spaces. Under the law, they have to have a certain number of accessible parking spaces, regardless of who uses them. And as- Wait a minute, what do you mean, if you have a lot that's for trucks and employees only? And if that was your only lot, then my client would not have standing. That is your second lot for trucks and employees only. But if you didn't have that second lot, then the employees would be parking in the same area as the restaurant patrons. So when you're looking at the numbers, there's no exception under the ADA for you saying it's only for employees and trucks. It's the only exception is if you say it's truck only. If it was a separate lot that was- And that a customer can park there. Well, first, as an initial matter, the description by Emma Crumby's consistently has been not that it's solely for trucks and employees. But it's for trucks, employees, and overflow. But you were saying the fact that there was a car there showed that you have, because it's not just a truck lot. No, I'm saying that for the purposes of determining the scoping requirements, it doesn't remove it. And that's what the expert has stated, is that, and that's why there's not a genuine issue on that. Yes, because the trucks, yeah. Thank you for your- Thank you. Ms. Leach, we'll hear from you. May it please the court, my name is Ashley Leach. I'm with the law firm Best and Flanagan, and I'm representing appellees today. To have Article 3 standing, appellant has the burden to prove that she suffered an actual injury. In fact, that is not speculative. That is, in fact, concrete and particularized. In addition to having that injury be something that this court can remedy with a favorable decision. If we look at the allegations that appellant has made about the interior violations, she alleges existed within the restaurant that she concedes she never visited. She does not have an injury in those violations, nor does she have an injury, in fact, that is concrete and particularized in a separate parking facility that, again, she does not allege in her complaint that she ever visited or entered. Nor does appellant have a redressable injury in the restaurant's parking lot where we accept that she did visit. She encountered four types of structural parking barriers in that restaurant parking lot. And after bringing forward the complaint, appellees voluntarily and permanently remediated that lot. But the problem I'm having with your argument is there's an allegation in the complaint that there's 130 parking spaces. It's generally agreed that the back parking lot is used for customers as overflow on weekends and when the orchard and the restaurant are particularly busy. Seems to me that there's a genuine dispute there because customers are using it and she didn't get all that she wanted. She wanted five or six parking spots, as the case may be, depending on the district court's finding. She got four. So there's still a live dispute there. And why doesn't she have standing to, if the parking lot is used by customers, why doesn't she encounter the parking lot? There wasn't sufficient parking? Had there been accessible parking in light of that back parking lot, she might have found the accessible parking. Why isn't there an injury there? Your Honor, there's no injury there because she did not encounter the parking lot in which she's alleging she had an injury. She did go into the restaurant parking lot. She says that she encountered only three spaces of ADA reserve parking in the restaurant parking lot. There is no allegation in the factual record that she ever went into the other vacant lot that was used for truck overflow employee parking that used to serve a now vacant truck stop. There are no signs directing patrons to park in that parking lot. It's an example of looking at Google Maps. If you pull up Google Maps, you can then count out the parking lots. But that's not sufficient to have an injury alleging that you went to a parking lot and it's a separate facility, and within that separate facility, you could not find a parking space that is an injury. So it's a question of standing then, right? It's not a question of mootness. See, when I read the district court's opinion, I was like, I'm not so sure about the mootness thing because there's still a lot of controversy. She didn't get everything she wanted. From your perspective, the correct frame of analysis would have been standing, that she didn't actually, they're stuck with a separate facility finding, or the plaintiff's stuck with a separate facility finding. And because they never, he or she never visited the separate facility, you can't make a claim based on that separate facility. That's correct, Your Honor, and I think that outcome- So the mootness, you're really saying they're two separate claims, aren't you? There's a claim as to parking facility number one, that claim she has standing, but it's moot. Because it's been redressed. Yes, Your Honor. Claim number two, you say she lacks standing. And I hear her saying it's all one claim about parking at the place. And that she encountered the parking problem, and therefore she has standing to challenge whether each facility has adequate spacing. And I think there is where this court's recent decision in Anthony Incorporated, Davis v. Anthony Incorporated, is really controlling and dispositive. Because merely alleging that you were in the vicinity of a violation and knowing that there's a potential violation in a separate facility doesn't give you standing to then bring forth a claim about the separate facility. So here, now that I'm hearing appellants say that they're accepting the district court's finding that there were two parking facilities. We have three different kinds of claims. We have claims in the restaurant lot that appellant personally encountered. We have claims in the truck lot that she did not personally encounter. And we have claims that she's alleging within the interior of the restaurant, which again, she did not personally encounter. And just because she personally encountered claims in the restaurant parking lot under Davis v. Anthony, she doesn't then have standing to allege violations she did not encounter in the truck parking lot or the interior of the restaurant. Now to get to that, does the judge have to really, in a way, reach the merits of this facilities issue? Because how can you, the premise of your argument is there are two parking facilities. That's correct, your honor. I suppose you're saying, well, the plaintiff now concedes that there are two, and so that's settled. But why isn't that some kind of merits determination as to how many facilities there are? Sure, your honor. If it was all one facility, then you would need five spots. Correct. We're not reaching the merits here because appellees had a factual attack on their 12B1 motion to dismiss against appellant's complaint. And under a factual attack, as stated in Osborne v. United States, the district court gets to interrogate the facts. They get to look beyond the pleadings, and they don't hold the pleadings as necessarily true. Because standing is such an important issue, this court gets to look at the factual underpinnings of the complaint to ensure there is, in fact, standing. And so here, that's what the district court did. So you're saying the decision about how many parking facilities was part of the standing analysis? Correct, the district court made it as a matter of law. Looking at the requirements under the 2010 ADA standards, section 208.2, looking at the appellant's complaint, and where she personally encountered a barrier, the district court made findings. And that's not reaching the merits of the case. The district court was not reaching the merits of- You made a decision on the merits that you're not entitled to five parking spaces. You lose on your claim that you're entitled to five parking spaces because there are two facilities. And you're only entitled to four in the first facility. But appellant only had standing to bring forward her complaint that she was entitled to four parking spaces within the restaurant. That assumes, though, that there are two facilities. That's correct. And she pleaded that she encountered whatever, 130 spots, or that the facility had 130 spots. That's the problem I'm having, because this is almost, you're right, there was a factual attack, but it was at the motion to dismiss sort of stage. We have no evidence, really, other than the factual attack that was made. Sure, and so to respond to your question, if appellant had actually pled that she personally encountered 130 parking spots, then I think this would look different. But that's not what her complaint says, and that's not what she has represented her visits to the Emma Crumby's restaurant in 2016 and 2017 to be. And so she hasn't alleged that she actually went to the separate parking facility. She has not alleged that she personally encountered any violations related to her disability in that parking lot. And so she does not have standing under the Davis v Anthony decision. I would like to address one point that appellant raised about the futile gesture that she's saying that appellant is not forced to undergo a futile gesture to visit parking spaces where there is a known violation. And appellant is taking that language from the Steger case, which I think is also very instructive to this court. But I want to point out the larger discussion in that case is that although plaintiffs need not engage in the futile gesture of visiting a building containing known barriers. That the owner has no intention of remedying. They must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers. And here, appellant has not shown evidence that she had personal knowledge or personally encountered barriers within the restaurant or within the truck parking lot. Nor has she brought forward evidence that she had plans to imminently return to either the truck parking lot or to the restaurant. And so under the Steger standards- She has a lot of detail about the interior in the complaint, doesn't she? There are details, your honor, but none of it is from personal knowledge. What does that mean, personal knowledge? Black's Law Dictionary defines personal knowledge as information derived from first hand experience or observation. But you're not saying she has to, you're saying she must actually enter the building and gain that knowledge before she can make a complaint, is that the argument? Yes, she must personally encounter and have personal knowledge of that would satisfy Steger, the Davis v. Anthony cases. In Steger, Judge Haney's opinion said even though the person never went to the second floor, he could challenge things up there. I assume that was not based on personal knowledge in the way that you're defining it. In Steger, the plaintiff, Birch, accessed the cafe in issue. He was an individual with a vision impairment, and so he went to the first floor restroom and was not able. So- But he didn't have what you're defining as personal knowledge about the flaws on the second floor. But critically, he had personal knowledge of the flaws on the first floor. And therefore, he had standing to then assert flaws throughout the building. And that's totally different here, where we have three different facilities. So if appellant went back to the restaurant, went back to the restaurant's parking lot and found that there were other violations, she would have standing to assert those other violations, or if she sent an expert, that sort of thing. She would have standing to assert those violations in the facility in which she actually had an injury. I see my time is up. Very well, thank you for your argument. Ms. Davis, or I'm sorry, Ms. Brown, we'll give you one minute for rebuttal, if you'd like. Thank you, your honors. The discussion of futile gesture does not come solely from Sierra V Franco. It actually comes from the actual case law itself, 42 USC 12188A1, which specifically states that nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or an organization covered by this subject does not intend to comply with the provisions. The fact that Ms. Davis had actual notice that there was no accessible seating on the inside means she does not need to go in and personally encounter it as Emma Crumbies has alleged. The fact that Ms. Davis knows that there are no accessible parking spaces in that back parking facility means that again, Ms. Davis does not need to go through the futile gesture of going to that back parking facility to have standing. She is aware of those violations and that awareness provides her an injury under the black letter law and therefore she has standing. Thank you. Very well, thank you both for your arguments. The case is submitted and the court will file an opinion in due course. That completes the argument calendar for this morning. The court will be in recess until 9 o'clock tomorrow.